# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**CAMP TALL TIMBERS, INC.**

    Plaintiff,

v.                                                                          **CIVIL ACTION NO.: 3:18-CV-175**
                                                                           **(GROH)**

**ECHO VALLEY TRAINING CENTER, LLC,**

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING
## THE PLAINTIFF'S MOTION FOR A PRELIIMINARY INJUNCTION

On May 30, 2019, the parties in the above-styled civil action appeared before the Court for a hearing on the Plaintiff's Motion for a Preliminary Injunction [ECF No. 30]. Edward I. Levicoff appeared on behalf of the Plaintiff, Camp Tall Timbers, Inc. ("Camp Tall Timbers"). Kathy M. Santa Barbara appeared on behalf of the Defendant, Echo Valley Training Center, LLC ("EVTC"). After reviewing the parties' briefs, considering the evidence presented and carefully analyzing the controlling law, the Court **DENIES** the motion for a preliminary injunction for the reasons provided herein.

### I. Background

This civil action arises from an incident that occurred on August 4, 2018, where a bullet went through a window of a Camp Tall Timbers' cabin and struck a staff member's leg. Camp Tall Timbers alleges the bullet came from EVTC's facility. The background of that dispute is as follows.

Camp Tall Timbers has been operating as a summer camp for children between the ages of seven and seventeen since 1970. On the property adjacent to Camp Tall

Timbers, EVTC has a firearm training facility which it has been operating since 2011. The facility is a private, by contract only, training facility utilized by federal Department of Defense personnel, special operations and elite task forces, federal, state and local law enforcement agencies, gun manufacturers and other private and government groups.

EVTC's property was purchased by Crooked Creek Investments, LLC in 2006. Between 2007 and 2008, three lower ranges were constructed on the property and in the Spring of 2015 an upper range was constructed. EVTC's upper range is approximately 400 to 500 yards from Camp Tall Timbers. The shooting direction on the upper range is in the opposite direction of Camp Tall Timbers. EVTC's three lower ranges are nine-tenths of a mile from Camp Tall Timbers. The shooting direction on the three lower ranges points in the direction of Camp Tall Timbers.

On August 4, 2018, a bullet went through the window of a Camp Tall Timbers' cabin and struck a staff member's leg. At 2:45 p.m., Brooke Burnside, who worked at Camp Tall Timbers, called 911 to report the incident. On the date of the incident, two of the three lower ranges were leased for use to Andrews International, a government contractor, for training exercises. Leslie Winner, a certified NRA firearms instructor, and a friend were using the upper range on the date of the incident. Mr. Winner was using the range between the hours of 10:00 a.m. and 1:00 p.m.

On October 24, 2018, Camp Tall Timbers filed this action seeking to enjoin EVTC from operating its firearm training facility or to enjoin EVTC from operating its facility until it can certify that it does not present any risk of harm to Camp Tall Timbers' campers, visitors, staff members or property. ECF No. 1. On May 10, 2019, Camp Tall Timbers filed a motion for a preliminary injunction. ECF No. 30. The Court held a hearing on

Camp Tall Timbers' motion on May 30, 2019.  The Court heard evidence from both parties and reserved issuing a decision until after receiving the parties' closing arguments.

## II.  Applicable Law

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citing Munaf, 553 U.S. 674, 689-90 (2008)).  To succeed on a motion for a preliminary injunction, the plaintiff must make a "clear showing" that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter, 555 U.S. at 20, 22.  "All four requirements must be satisfied."  Real Truth About Obama, Inc. v. Fed. Elec. Comm'n, 575 F.3d 342, 346 (4th Cir. 2009) (vacated and remanded on other grounds).

If the court grants a motion for a preliminary injunction it must: (1) state the reasons why the injunction was issued; (2) state the injunction's terms specifically; and (3) describe in reasonable detail the act or acts restrained or required.  Fed. R. Civ. P. 65(d)(1).  Additionally, the court may grant a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  In the Fourth Circuit, "this rule is mandatory and unambiguous."  Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 421 (4th Cir. 1999).  "Although the district court has discretion to set bond amount in such sum as the court deems proper, it is not free to disregard the bond requirement altogether."  Id.  "[F]ailure to require bond upon issuing injunctive relief is reversible error."  Id.

### III. Findings of Fact and Conclusions of Law

The Court finds that an injunction is not warranted in this matter because Camp Tall Timbers has not made a clear showing (1) it is likely to succeed on the merits of its claims; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.

**A. Camp Tall Timbers has not made a clear showing that it is likely to succeed on the merits of its claims.**

First, after reviewing the evidence and considering the arguments of counsel, the Court finds that Camp Tall Timbers has not made a clear showing it is likely to succeed on the merits of its claims. Camp Tall Timbers' complaint appears to state a claim in negligence, strict liability and nuisance. In its motion for a preliminary injunction, Camp Tall Timbers states "[t]he shooting incident clearly supports a claim against [EVTC], whether sounding in negligence, nuisance or otherwise." ECF No. 30 at 5. Camp Tall Timbers did not include a strict liability claim in its motion for preliminary injunction or closing argument when addressing its likelihood of success on the merits. EVTC argued in its response that "no case in West Virginia has ever held that strict liability applies to guns or shooting ranges." ECF No. 35 at 5. Finding no legal support for Camp Tall Timbers' strict liability claim, the Court will address the nuisance and negligence claims in turn.

To succeed on a private nuisance claim, a plaintiff must show "a substantial and unreasonable interference with the private use and enjoyment of another's land." Hendricks v. Stalnaker, 181 W.Va. 31, 33 (1989). "The definition of private nuisance incudes conduct that is intentional and unreasonable, negligent or reckless, or that results in abnormally dangerous conditions or activities in an inappropriate place." Id. at 33-34.

4

Camp Tall Timbers alleges the sound of the gunfire on EVTC's property is extremely loud, disruptive and intimidating, constituting a clear and unmistakable nuisance to Camp Tall Timbers' quiet enjoyment of its property.

EVTC claims the statute of limitations bars Camp Tall Timbers' noise nuisance claim. Under West Virginia law, a plaintiff has two years to bring a nuisance claim after a substantial change in conditions. W.Va. Code § 61-6-23. In Camp Tall Timbers' complaint, it alleges that EVTC began operating an additional facility on its property within the past two years that is approximately 400 to 500 yards away from Camp Tall Timbers. Camp Tall Timbers argues the new range has significantly increased the noise to its facility. To the contrary, EVTC alleges that it has been operating the facility since the Spring of 2015 and therefore, the statute of limitations bars the claim.

Nevertheless, Camp Tall Timbers argues that its nuisance claim is not confined to a noise nuisance to which the statute applies. Camp Tall Timbers argues that the shooting incident constituted a substantial and unreasonable interference with the use of Camp Tall Timbers' land. The Court need not decide whether Camp Tall Timbers' noise nuisance claim is time barred because Camp Tall Timbers has not made a clear showing that the bullet or noise originated from EVTC's property.

Officer Richard Nelson, one of the West Virginia Department of Natural Resources officers who investigated the incident on August 4, 2018, testified the hearing. Officer Nelson concluded it appeared the bullet came from the Echo Valley Range. Officer Nelson based his determination on his finding that the .223 caliber round bullet was the same caliber of bullets that were being fired on EVTC's property, the range was pointed almost directly at the cabin struck by the bullet and Camp Tall Timbers heard the sound

5

of gunfire coming from EVTC's facility at the time of the incident. However, on the complaint sheet attached to his report, Officer Nelson stated "[a]t this time there is no hard evidence to positively say the bullet came from the range and if so who fired the round." ECF No. 41-1 at 4.

At the hearing, Officer Nelson testified that the bullet came from one of EVTC's lower ranges. On cross-examination, defense counsel asked Officer Nelson how confident he was that the bullet came from EVTC. Officer Nelson responded that the "can't say a hundred percent on anything." Officer Nelson Hr'g Test.

Officer Nelson further testified that, when conducting his investigation, he informed Carlton Newlin that bullets were going through the backstop on the upper range. He further informed Mr. Newlin that he needed to fortify the backstop to prevent further issues. He did not make any recommendations regarding the three lower ranges. Officer Nelson testified that he did not investigate any other areas surrounding the camp to determine if the bullet could have originated elsewhere. When questioned on this, he testified that camp personnel "didn't hear any shots from any other direction." Id.

Sergeant Michael Lott, another West Virginia DNR officer who participated in the investigation at Camp Tall Timbers on August 4, 2018, testified that "just looking at the pictures and the totality of circumstances, as far as the number of rounds that were fired, and the people that are firing, and the direction that they were firing, yes, I concluded that it is very possible [the bullet] could have come from [EVTC's lower range]." Sergeant Lott Hr'g Test. On cross-examination, defense counsel asked Sergeant Lott why he only went to EVTC's facility for investigation. Sergeant Lott testified "that's where we were told that these rounds were coming from, the shots were coming from." Id.

The Court also heard evidence that Camp Tall Timbers has a riflery range on its property and .22 caliber bullets are used.[1] Brooke Burnside, who previously worked at Camp Tall Timbers, testified that she was working on August 4, 2018. She further testified that camp was between sessions and no shooting activities were being conducted on the camp's riflery range on August 4, 2018. Ms. Burnside testified that she heard shooting at the time of the incident and believed it was coming from EVTC's facility.

Scott L. Thomasson, who the Court found qualified as an expert to testify in shooting range safety and in shooting-related investigations, testified that, at the three lower ranges, you are "actually shooting into the base of a mountain. The likelihood of a bullet penetrating that backstop is pretty much impossible just because it's the base of a mountain." Scott Thomasson Hr'g Test. Mr. Thomasson testified that the change in elevation from EVTC's lower ranges and Camp Tall Timbers' property is climbing between 600 and 1100 feet in elevation. He further testified that it is highly unlikely a bullet would overshoot the range on the lower ranges, "absent of somebody aiming the gun up in the air and shooting it." Id. Mr. Thomasson testified that EVTC's ranges are safer than most based on the topography and the fact that people are shooting into the base of a mountain. Moreover, he testified that "it's highly unlike that [the bullet] came from EVTC." Id.

Based on the testimony at the hearing and the evidence before the Court, there is a factual issue as to whether the bullet even originated from EVTC. Moreover, Camp Tall Timbers has not presented enough evidence to enable the Court to find the camp has made a clear showing it is likely to succeed on the merits of its nuisance claim.

---

[1] Glenn Smith, Camp Tall Timbers' owner and director, testified that Camp Tall Timbers will no longer be operating its riflery range due to the August 4, 2018 incident.

Next, to succeed on a negligence claim, Camp Tall Timbers must show: (1) a duty owed by the defendant; (2) a negligent breach of that duty; (3) causation; and (4) damages.  See Wheeling Park Commission v. Dattoli, 237 W.Va. 275, 280 (2016).  Importantly, "negligence must be the proximate cause of the injury complained of." Hartley v. Crede, 140 W. Va. 133 (1954), overruled on other grounds, State v. Kopa, 173 W.Va. 43 (1983).  Camp Tall Timbers has not made a clear showing it is likely to succeed on its negligence claim because it cannot prove a breach by EVTC or causation.  To prove a breach and causation, Camp Tall Timbers would need to show the bullet originated from EVTC's facility.  However, as discussed above, Camp Tall Timbers has not made the requisite showing.

Therefore, the Court finds that Camp Tall Timbers has not made a clear showing that it is likely to succeed on the merits of its claims.

### B. Camp Tall TImbers is not likely to suffer irreparable harm in the absence of preliminary relief.

Next, the Court finds that Camp Tall Timbers is not likely to suffer irreparable harm in the absence of preliminary relief.  Camp Tall Timbers argues two grounds for irreparable harm: (1) safety; and (2) the impact on its business.

Camp Tall Timbers has not shown that the bullet originated from EVTC's property—likewise, it cannot show the campers are unsafe if the Court does not issue a preliminary injunction.  Such a result would require the Court to find that EVTC poses a risk to the safety of individuals on Camp Tall Timbers' property, which it cannot do with the evidence presented.

Moreover, Camp Tall Timbers is in the same position as EVTC when considering irreparable harm.  Both parties are businesses that have promises to perform under

contracts for the summer. If Camp Tall Timbers closes camp for the summer, it stands to lose profits and it may affect its business relationships.

> Only when a temporary delay in recovery somehow translates to permanent injury—threatening a party's very existence by, for instance, driving it out of business before litigation concludes—could it qualify as irreparable. But otherwise, financial losses that can be recovered by a prevailing party at the close of litigation ordinarily will not justify preliminary relief.

Mt. Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell, 915 F.3d 197, 218 (2019) (internal citations omitted). Camp Tall Timbers has not alleged that a temporary shutdown in business, if it truly believes safety is at issue, or the lost profits from operating this summer without an injunction, will threaten its very existence. Any financial losses it stands to lose can be recovered if it ultimately prevails at trial.

Accordingly, the Court finds that Camp Tall Timbers is not likely to suffer irreparable harm in the absence of preliminary relief.

**C. The balance of the equities does not tip in Camp Tall Timbers' favor.**

Third, the Court finds that the balance of equities does not tip in Camp Tall Timbers' favor.

Camp Tall Timbers argues that not only is children's safety is at issue and children should be able to enjoy summer camp without the sound of machine guns. However, Camp Tall Timbers has the choice to discontinue further camp sessions until after the dispute is resolved if it truly believes safety is a concern. Both parties have business obligations over the summer and stand to lose profits and potentially tarnish their reputation. This is not a case where several bullets have escaped EVTC's property before or a case where Camp Tall Timbers provided conclusive evidence that the bullet originated from EVTC's facility. There is a question as to whether the bullet even

9

originated from EVTC's facility.  Therefore, the parties are similarly situated to suffer the same losses depending on if the injunction were to issue.  Accordingly, the Court finds that the balance of the equities does not tip in Camp Tall Timbers' favor.

### D. An injunction is not in the public interest.

Finally, the Court does not find that an injunction is in the public interest.  Camp Tall Timbers argues that the public has an interest in protecting people and children from gunfire.  It further argues that the public has an interest in children being able to attend summer camp without the sound of machine guns.  While the public does have an interest in protecting the safety of children, Camp Tall Timbers has the ability to discontinue camp sessions if it is concerned with campers' safety or the sound of firearms.  As a business owner, it has a responsibility to provide a safe environment for its customers.  Moreover, it cannot be said that preventing EVTC from operating will protect children because there is a factual issue as to whether the bullet came from EVTC's facility.

The Court further finds that the public has an interest in EVTC continuing to operate its facility because it provides a location for law enforcement officers to utilize for firearms training.

Accordingly, the Court finds that an injunction is not in the public interest.

## IV. Conclusion

For all the reasons provided herein, the Court finds that a preliminary injunction is not warranted.  Accordingly, the Plaintiff's Motion for a Preliminary Injunction is hereby **DENIED**.

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** June 7, 2019

*/s/ Gina M. Groh*
GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE